**Martha Jean PHILLIPS, Petitioner,**

v.

**Harry S. PHILLIPS, et al., Respondents.**

No. D–0107.

Supreme Court of Texas.

Dec. 11, 1991.

Rehearing Overruled Jan. 29, 1992.

Michael S. Wilk, Anna L. Stock, Jay N. Gross, Houston, for petitioner.

Patrick Kelley, Otis Carroll, Tyler, for respondents.

## OPINION

HECHT, Justice.

We granted the applications for writ of error in this case to decide whether a contractual provision that requires payment of a multiple of actual damages for breach of trust is an unenforceable penalty, and if so, whether the defense of penalty was waived because it was not pleaded. The trial court and court of appeals refused to enforce the provision. 792 S.W.2d 269 (Tex.App.1990). We affirm the judgment of the court of appeals.

During 32 years of marriage, Harry and Martha Phillips accumulated over $18 million in community property, primarily through the oil and gas business Harry managed. When they divorced, rather than break up their oil and gas holdings, they created Phillips & Phillips, Ltd., a limited partnership, and transferred the bulk of their assets to it. Each had an equal interest in the partnership. Harry, the only general partner, agreed to work for the partnership full-time without salary and to offer Martha the option to participate in any business opportunities he pursued outside the partnership. Martha, the only limited partner, agreed that she would have no right to participate in Harry's business decisions for the partnership and that she would leave each of her four children by Harry at least one-sixth of her estate.

The partnership agreement required Harry to pay himself and Martha each a mini-

mum of $21,000 per month for 24 months, and then minimum monthly distributions adjusted for inflation and for oil and gas prices. It also required Harry to furnish Martha certain financial information about the partnership and to cooperate with her in auditing its affairs. The agreement contained the following provision: "If the general partner breaches his trust hereunder, he shall pay to the limited partner as liquidated damages ten times the amount she loses as a result of such breaches of trust. Errors of judgment shall not be considered breaches of trusts."

The value of the partnership increased under Harry's management, but Harry did not fully comply with the terms of the written agreement. In particular, after the first 20 months Harry distributed much less than the required minimum amounts, never actually calculating what payments the agreement required. He also failed to provide timely annual statements of operations and refused to cooperate fully with Martha's attempts to audit the partnership.

Martha eventually sued Harry for dissolution of the partnership and damages based upon Harry's breach of contractual and fiduciary duties. The case was tried to a jury, who found that Harry breached the partnership agreement by favoring himself in paying his personal expenses and encumbering partnership assets, thus endangering partnership distributions. The jury also found that Harry breached both the partnership agreement and his fiduciary duty to Martha by failing to keep current and complete partnership books, failing to prepare required annual statements, and interfering with Martha's efforts to examine partnership books and records.[1] The jury assessed Martha's actual damages at $300,000. None of the jury's findings are challenged by the parties on appeal.

During the trial the parties stipulated that a reasonable fee for legal services necessary for Martha's prosecution of the case was $235,302.14. The jury was aware of this stipulation, and the trial court surmised that the jury included this amount in its $300,000 finding. Accordingly, the trial court rendered judgment for Martha for a total of $300,000, $235,302.14 against the partnership and $64,697.86 against Harry, and refused to award Martha any additional amount for attorney fees. The trial court also ordered the partnership dissolved.

Martha appealed; Harry did not. The court of appeals held that the trial court erred in refusing to award Martha the $235,302.14 stipulated attorney fees in addition to the $300,000 damages found by the jury, but that the trial court did not err in refusing to award Martha decuple damages under the partnership agreement. Consequently, the appeals court reversed the judgment of the trial court in part and rendered judgment against Harry for a total of $535,302.14, plus interest.[2]

---

1. The jury also found that Harry breached the partnership agreement by failing to calculate the amount of distributions required to be paid the partners and by failing to make all the distributions required by the agreement, but that Martha ratified Harry's actions in making distributions other than as called for by the agreement.

2. Harry contends that the court of appeals should not have disturbed the trial court's damage award. As a rule, however, the judgment in a case tried by a jury must conform to the verdict. *See* TEX.R.CIV.P. 301. The trial court properly did not ask the jury to include in its determination of Martha's actual damages a reasonable fee for legal services necessary to her prosecution of the case. *See Hammonds v. Hammonds,* 158 Tex. 516, 313 S.W.2d 603, 605 (1958). We must assume that the jury followed the trial court's instructions and answered the question put to them. *See Turner, Collie & Braden v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982). Given that assumption, we must conclude that the jury's answer of $300,-000 to the trial court's question did not include attorney fees.

Harry argues that, logically, the jury must have arrived at their $300,000 finding by adding $37,585 accounting fees which Martha testified she incurred to the stipulated $250,000 in attorney fees. However plausible Harry's explanation of the jury's reasoning process may be, it cannot substitute for the jury's finding. What the jury found, not why the jury found it, is the relevant inquiry absent jury misconduct. *First Nat'l Bank v. Zimmerman,* 442 S.W.2d 674, 678 (Tex.1969).

Under Rule 301, the trial court could properly have rendered judgment awarding Martha less than the $300,000 found by the jury as actual damages only if the finding had no support in

Martha contends that she is entitled to recover liquidated damages equal to ten times the actual damages found by the jury, as provided by the limited partnership agreement. Harry contends that the contractual provision is not an enforceable agreement for liquidated damages but an unenforceable penalty. Martha argues that even if Harry is correct, he has waived any defense of penalty by failing to plead it as an affirmative defense.

■ We first considered the difference between an enforceable liquidated damages provision and an unenforceable penalty in *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 485–486 (1952). There we explained:

> Volumes have been written on the question of when a stipulated damage provision of a contract should be enforced as liquidated damages and when enforcement should be denied because it is a penalty provision.... All agree that to be enforceable as liquidated damages the damages must be uncertain and the stipulation must be reasonable.

> .    .    .    .    .

> The right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates the principle underlying that rule.

More recently, in *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340, 342 n. 2 (Tex.1979), we restated the two-part *Stewart* test for determining whether to enforce a contractual damages provision as follows: "In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *Cf.* Tex.Bus. & Com. Code § 2.718(a).[3]

■ Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court to decide. *Farrar v. Beeman*, 63 Tex. 175, 181 (1885); *see Lefevere v. Sears*, 629 S.W.2d 768, 771 (Tex.Civ.App.—El Paso 1981, no writ); *Muller v. Light*, 538 S.W.2d 487, 488 (Tex. Civ.App.—Austin 1976, writ ref'd n.r.e.); *Schepps v. American Dist. Telegraph Co.*, 286 S.W.2d 684, 690 (Tex.Civ.App.—Dallas 1955, no writ); *Zucht v. Stewart Title Guar. Co.*, 207 S.W.2d 414, 418 (Tex.Civ. App.—San Antonio 1947, writ dism'd); *Bourland v. Huffhines*, 244 S.W. 847, 849 (Tex.Civ.App.—Amarillo 1922, writ dism'd). Sometimes, however, factual issues must be resolved before the legal question can be decided. For example, to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were. *See Johnson Eng'rs, Inc. v. Tri–Water Supply Corp.*, 582 S.W.2d 555, 557 (Tex.Civ.App.—Texarkana 1979, no writ); *Oetting v. Flake Uniform & Linen Serv., Inc.*, 553 S.W.2d 793, 796–797 (Tex.Civ.App.—Fort Worth 1977, no writ); *Smith v. Lane*, 236 S.W.2d 214, 215 (Tex.Civ.App.—San Antonio 1950,

the evidence. *See Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194, 199 (1952). *See also* 4 R. McDonald, Texas Civil Practice in District and County Courts § 17.32 nn. 7–8 (rev. 1984). Harry does not argue here that there is no evidence to support the jury's finding. Thus, we conclude that the court of appeals was correct in rendering judgment against Harry for the actual damages found by the jury plus stipulated attorney fees.

Harry also complains of the court of appeals' judgment that he, rather than the partnership, pay Martha's attorney fees. This point, however, was not raised in Harry's motion for re-

hearing in the court of appeals and is therefore not preserved. *See* Tex.R.App.P. 131(e); *Oil Field Haulers Ass'n v. Railroad Commission,* 381 S.W.2d 183, 189 (Tex.1964).

**3.** "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

no writ); *Southern Plow Co. v. Dunlap Hardware Co.*, 236 S.W. 765, 766–767 (Tex. Civ.App.—Dallas 1922, no writ); *Walsh v. Methodist Episcopal Church*, 212 S.W. 950, 952 (Tex.Comm'n App.1919, judgm't adopted).

■■■ The enforceability of the contractual provision in this case involves no fact issues. A contractual provision like the one here by which one party agrees to pay the other some multiple of actual damages for breach of the agreement does not meet either part of the legal test for an enforceable liquidated damages provision. It cannot meet the first prong of the test because the harm caused by the breach of the contract is not incapable or difficult of estimation. The provision assumes actual damages can and will be determined, indeed must be determined, before the prescribed multiplier can be applied. The provision cannot meet the second prong of the test because, instead of attempting to forecast actual damages, it calls for them to be determined and then multiplied. *Cf. Robert G. Beneke & Co. v. Cole*, 550 S.W.2d 321 (Tex.Civ.App.—Dallas 1977, no writ) (contract provision which fixes liquidated damages without excluding additional liability for actual damages is not a reasonable forecast of just compensation and therefore a penalty). A contractual provision like the one in this case is thus, on its face, an unenforceable penalty.

■■■ Harry, however, did not plead penalty as an affirmative defense to an award of damages under the liquidated damages provision in the partnership agreement. Although penalty is not among the affirmative defenses enumerated in Rule 94, TEX.R.CIV.P., the listing in that rule is not exclusive. Penalty is, in the language of the rule, a "matter constituting an avoidance or affirmative defense." *Johnson*, 582 S.W.2d at 557; *Oetting*, 553 S.W.2d at 795–796; *Robinson v. Granite Equip. Leasing Corp.*, 553 S.W.2d 633, 637 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Walter E. Heller & Co. v. B.C. & M., Inc.*, 543 S.W.2d 696, 697 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.); *LoBue v. United Serv.*

*Planning Ass'n*, 467 S.W.2d 574, 576 (Tex. Civ.App.—Fort Worth 1971, writ dism'd); *Young v. J.F. Zimmerman & Sons, Inc.*, 434 S.W.2d 926, 927 (Tex.Civ.App.—Waco 1968, writ dism'd); *Smith v. Waite*, 424 S.W.2d 691, 693 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.); *Smith*, 236 S.W.2d at 215; *Southern Plow*, 236 S.W. at 766–767; *Walsh*, 212 S.W. at 952. As a general rule, an affirmative defense must be pleaded or it is waived. TEX.R.CIV.P. 94.

■ One exception to this rule is the defense of illegality, a defense specifically listed in Rule 94. "[I]f the illegal nature of the document to be relied upon or sought to be enforced is apparent from the plaintiff's pleadings, it is not necessary that illegality be specially pleaded by the defendant in order to rely upon it as a defense." *Lewkowicz v. El Paso Apparel Corp.*, 625 S.W.2d 301, 303 (Tex.1981); *accord Niles v. Harris County Fresh Water Supply Dist.*, 339 S.W.2d 562, 563 (Tex.Civ.App.—Waco 1960, writ ref'd); *Reid v. Associated Employers Lloyds*, 164 S.W.2d 584, 585–586 (Tex.Civ.App.—Fort Worth 1942, writ ref'd); *Montgomery Ward & Co. v. Lusk*, 52 S.W.2d 1110 (Tex.Civ.App.—Waco 1932, writ ref'd); *Texas & P. Coal Co. v. Lawson*, 89 Tex. 394, 34 S.W. 919, 921 (1896). Two principles support this exception to the general rule that affirmative defenses are waived if not pleaded. One is that "[w]hen a plaintiff in his pleadings anticipates defensive matters and pleads them, a defendant may rely upon the defenses though his only pleading is a general denial." *Raney v. White*, 267 S.W.2d 199, 200 (Tex.Civ. App.—San Antonio 1954, writ ref'd). Pleading an agreement illegal on its face in effect anticipates the defense. The other principle is that the courts will not enforce a plainly illegal contract even if the parties do not object. *Lawson*, 34 S.W. at 921. Enforcement of an illegal agreement violates public policy. *Id.*

■ For the same reasons, we hold that the defense of penalty is not waived by the failure to plead it if it is apparent on the face of the petition and established as a matter of law. Enforcement of a penalty, like enforcement of an illegal contract, vio-

lates public policy. RESTATEMENT (SECOND) OF CONTRACT § 356; *see State v. Alpha Oil & Gas, Inc.*, 747 S.W.2d 378 (Tex.1988). It should not be done, even if the parties do not object. In this case Martha pleaded that she was "entitled to damages ... in the amount of ten (10) times all losses suffered". Inasmuch as Martha's own pleading establishes that the contractual provision she relies upon is an unenforceable penalty under our decisions in *Stewart* and *Campesi* as a matter of law, Harry was not required to plead penalty as an affirmative defense.

Contrary to the dissent's very exaggerated alarms, we do not hold that the affirmative defense of penalty need never be pleaded. Whenever the defense is not clearly established on the face of the pleadings, as it is here, it must be pleaded. We do not "resurrect[ ] trial by ambush", *post*, at 790, or "retreat from ... encouraging full disclosure during discovery", *post*, at 792. We apply a narrow but necessary exception, long and well established, to the general requirement that affirmative defenses be pleaded. We do not hold that penalty "can be asserted as a defense for the first time on appeal", *post*, at 792, in violation of Rule 52(a), TEX.R.APP.P. The record in this case reflects that the issue of penalty was raised in the trial court, and that the trial court refused to enforce the penalty provision of the partnership agreement.

\*     \*     \*     \*     \*     \*

Accordingly, we conclude that Martha is not entitled to recover ten times her actual damages. Finding no error in the judgment of the court of appeals, we affirm it.

GONZALEZ, Justice, dissenting.

Despite the clear language of TEX. R.CIV.P. 94 and the collective wisdom of every court of appeals of this state that has considered the issue, the majority holds that a defendant need not affirmatively plead the defense of "penalty" in a contract action. This holding resurrects trial by ambush and rejects the notion that parties are entitled to know what theories of law they will face at trial. I would hold that by failing to plead it, Mr. Phillips waived his right to assert that the contract he entered into with his wife is unenforceable. Furthermore, since Mr. Phillips waived the penalty defense by failing to affirmatively plead it, I would not reach the question of whether the contractual provision in question is, on its face, an unenforceable penalty. I thus would reverse the judgment of the court of appeals and remand this cause to the trial court for entry of a judgment that enforces the provision.

Mr. and Mrs. Phillips were married for 32 years prior to getting a divorce. With the assistance of counsel, they entered into a pre-divorce agreement, whereby they transferred about $18 million of their assets into a partnership which Mr. Phillips would manage. Mr. Phillips in effect said to his soon-to-be ex-wife: "Trust me." As a disincentive to cheating or short changing Mrs. Phillips, Mr. Phillips pledged that he would pay her 10 times the amount of the losses if he violated the contract.[1] The agreement also recited that Mr. Phillips owed Mrs. Phillips a fiduciary duty, a higher standard of care than normally exists between parties to a contract.[2]

Eight years later, Mrs. Phillips sued Mr. Phillips, alleging that he violated the agree-

---

**1.** At trial, Mr. Phillips testified as follows:

Q There's another interesting provision in [the partnership agreement] that says if Mrs. Phillips can show that you have breached your fiduciary duty to her that you will be obliged to pay her 10 times any amount that she proves. Are you familiar with that?
A Yes sir.
Q How in the world did that get in there?
A I wanted her to let me-wanted to prove to her that I would not do anything wrong.
Q So—
A So I put it in myself.

Q Was it your idea?
A Yes, sir.

**2.** The partnership agreement provides:

16.1 *Fiduciary Capacity.* "The general partner shall act in a fiduciary capacity with respect to the limited partner."
16.2 *Damages.* "If the general partner breaches his trust hereunder, he shall pay to the limited partner as liquidated damages ten times the amount she loses as a result of such breach. Errors of judgment shall not be considered breaches of trusts".

ment. Mr. Phillips entered a general denial and asserted the affirmative defenses of limitations, laches, and equitable estoppel. In a unanimous verdict, the jury found that Mr. Phillips breached the agreement by interfering with Mrs. Phillips right to examine the books and records of the partnership, and by willfully underpaying Mrs. Phillips and overpaying himself.

### AFFIRMATIVE DEFENSE

Rule 94 enumerates specific affirmative defenses which are waived if not pleaded, such as accord and satisfaction, arbitration and award, fraud, illegality, statute of frauds, statute of limitations, "and any other matter constituting an avoidance or affirmative defense." TEX.R.CIV.P. 94. An affirmative defense does not tend to rebut factual propositions asserted by a plaintiff, but seeks to establish an independent reason why the plaintiff should not recover. *Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542, 546 (Tex.1991). Asserting the defense of penalty does not deny the facts pleaded by the plaintiff; instead, it is an independent reason why the contract should not be enforced as written. In other words, if the defendant asserts facts that defeat in whole or in part the plaintiff's claim, such assertion amounts to an affirmative defense that must be pleaded or it is waived. "Penalty" is a classic affirmative defense; in my view, it clearly falls within the purview of Rule 94.

The majority implies that as long as the issue does not depend upon evidence or findings, no purpose is served by requiring that it be specifically pleaded. But there is a valid purpose to serve, namely, the need for notice and fair play, so as to avoid trials by ambush.

The court refers to *Lewkowicz v. El Paso Apparel Corp.*, 625 S.W.2d 301, 303 (Tex.1981), for its holding that pleading is not necessary if the affirmative defense appears on the face of the plaintiff's pleadings. That case is distinguishable because it involved the defense of illegality of contract. The defense of illegality is a special situation and a poor choice from which to draw a rule of general applicability. The rule that a court will not enforce an illegal contract is for the public's benefit rather than contending parties. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 151 (1947). A strong policy reason supports the illegality exception. That is, courts should not have to validate contracts that are illegal on their face merely because a defendant has failed to plead illegality.

Here, the court seems to be saying that pleading and proof are not necessary, because the issue of whether the liquidated damages provision is a penalty is a question of law. In some contracts it may be possible to determine from their four corners that they impose a penalty. The classic example is the lease that assesses the same liquidated damages for every breach, regardless of how trivial. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). But, in most cases, proof will be necessary. *Commercial Union Ins. Co. v. La Villa I.S.D.*, 779 S.W.2d 102, 106–107 (Tex.App.—Corpus Christi 1989, no writ); *See* D. WENDORF, ET AL., TEXAS RULES OF EVIDENCE MANUAL, I–38 (3rd ed. 1991).

A good example of the need for proof is *Presnal v. TLL Energy Corp.*, 788 S.W.2d 123, 127 (Tex.App.—Houston [1st Dist. 1990], writ denied). In that case, a mineral lease provided that the lessee was required to drill a second well or pay $75,000, which the defendant contended was a penalty. There is no way a court could possibly know if this provision is a reasonable forecast of damages and therefore not a penalty, unless pleadings and proof develop the issue. It would be patently unfair not to require defendant to notify the plaintiff that the possible existence of penalty would be an issue and this is contrary to well established case law.

Every intermediate appellate court considering this issue has held that penalty is an affirmative defense under Rule 94 which is waived if not pleaded. *Bethel v. Butler Drilling Co.*, 635 S.W.2d 834, 838–839 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Robinson v. Granite Equip. Leasing Corp.*, 553 S.W.2d 633, 637 (Tex.Civ.App.—Houston [1st Dist.] 1977,

writ ref'd n.r.e.); *Walter E. Heller & Co. v. B.C. & M., Inc.,* 543 S.W.2d 696, 697 (Tex. Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.); *LoBue v. United Serv. Planning Ass'n,* 467 S.W.2d 574, 576 (Tex.Civ. App.—Fort Worth 1971, writ dism'd); *Young v. J.F. Zimmerman & Sons, Inc.,* 434 S.W.2d 926, 927 (Tex.Civ.App.—Waco 1968, writ dism'd); *Smith v. Waite,* 424 S.W.2d 691, 693 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.).

There is no compelling reason for this court now to reject by implication the well-grounded pleading practice and disagree with the cases cited above that hold that as a rule penalty is an affirmative defense which must be pleaded or it is waived. In my view, this is a retreat from this court's recent trend towards encouraging full disclosure during discovery of all witnesses, facts and legal theories upon which a party intends to rely at trial. This trend not only encourages litigants to be well prepared for trial, but also enables disputes to be resolved on their true merits and not on "mere technicalities." It makes no sense to me to subject parties to a severe sanction for failing to disclose witnesses or to supplement discovery responses, but not require them to plead the legal theory upon which they intend to rely to defeat their opponent's claim. The majority has created an exception to Rule 94 that has a visceral appeal, but collapses on its own logic. The court says that the contractual provision in issue is a penalty as a *matter of law,* and thus need not be pleaded (and can be asserted as a defense for the first time on appeal). But a defendant likewise may defeat a contract claim under a statute of limitations defense. And while the defendant may be entitled to a judgment as a *matter of law,* we nevertheless require affirmative pleading of the statute of limitations defense. The court ultimately rationalizes its de facto modification of Rule 94 by relying on the RESTATEMENT (SECOND) OF CONTRACTS § 356 to assert that public policy demands the result. The court expands the public policy exception to Rule 94's pleading requirement beyond the exception for illegal contracts to include contracts that allegedly impose a penalty. This is a faulty rationale. First, this is not a case where pure contract principles apply. Mr. Phillips agreed to a higher standard of care (namely, a fiduciary's standard) than he normally would have owed Mrs. Phillips in a standard contractual relationship. Courts impose damages on parties who violate a fiduciary duty in order to punish the party's breach of trust. I agree with the Restatement § 356's directive that the "central objective behind the system of contract remedies is compensatory, not punitive." RESTATEMENT (SECOND) OF CONTRACTS § 356 comment a (1979). But Mr. Phillips entered into this agreement with his eyes open, accepting a higher than normal standard of care and devising and adopting a measure of damages for his breach of that standard. I do not see how the it advances the best interest of the public to bail him out of his bargain. I would hold that penalty is an affirmative defense that must be pleaded and that Mr. Phillips waived this defense by failing to plead it. For the above reasons, I dissent.

MAUZY and DOGGETT, JJ., join this opinion.