Reversed and Rendered and Memorandum Opinion filed June 1, 2004









Reversed
and Rendered and Memorandum Opinion filed June 1, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-01127-CV

_______________

 

FERNANDO GARZA AND MOHAMMED S. HELLAIL 

D/B/A PETROLEUM & INDUSTRIAL SUPPLY CO.,
Appellants

 

V.

 

DEALERS ELECTRICAL SUPPLY, Appellee

_________________________________________________________________

 

On Appeal from the County Civil Court
at Law Number 1

Harris County, Texas

Trial Court Cause No. 745,630

_________________________________________________________________

 

M E M O R A N D U M  
O P I N I O N

 

In this contract dispute, Fernando
Garza and Mohammed Hellail d/b/a Petroleum & Industrial Supply Co. (APISC@) appeal a judgment in favor of
Dealers Electrical Supply (ADealers@) on the grounds that: (1) there is legally insufficient
evidence of PISC=s breach and Dealers=s damages; (2) Dealers=s demand for payment was excessive;
and, alternatively, (3) PISC was harmed by the trial court=s failure to file findings of fact
and conclusions of law.  We reverse and
render a take-nothing judgment.








In 1998, PISC ordered a transformer
from Dealers, but cancelled the order before the transformer was delivered and
made no payment of the purchase price. 
Dealers filed this suit, and, following a bench trial, was awarded the
contract price for the transformer and attorney=s fees.  PISC=s first issue, contending that there
is no evidence of any correct measure of damages, is dispositive of the appeal.

In conducting a legal sufficiency
review, we view the evidence in a light that tends to support the disputed
finding and disregard any evidence and inferences to the contrary.  Wal-Mart Stores, Inc v. Canchola, 121
S.W.3d 735, 739 (Tex. 2003).  If more
than a scintilla of evidence supports the challenged finding, the no-evidence
challenge must fail.  Id.

The purpose of damages, including the
remedies provided under the Texas Business and Commerce Code, is to place the
injured party in as good a position as it would enjoy if the other party had
fully performed under the contract.[1]  Thus, the universal rule for measuring
damages for the breach of a contract is just compensation for the loss or
damage actually sustained, neither less nor more.  Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991).  Moreover, to recover, a party must
affirmatively prove each element of the applicable damages,[2]
and a fact finder has discretion to award damages only within the range of
evidence presented at trial.  Gulf
States Utilities Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002).








The measure of damages to a seller
for a buyer=s repudiation is: (a) the difference
between the market price of the goods and the unpaid contract price (together
with incidental damages but less expenses saved); or, if that measure of
damages is inadequate, (b) the profit that the seller would have made from full
performance by the buyer (together with allowable incidental damages).  Tex.
Bus. & Com. Code Ann. ' 2.708 (Vernon 1994).[3]  Conversely, a seller may recover the contract
price (and any incidental damages), i.e., without reduction by the
market price, where: (1) the buyer has failed to pay for goods it has accepted;
or (2) goods have been identified to the contract and the seller is either
unable, after reasonable effort, to resell them at a reasonable price or the
circumstances reasonably indicate that such an effort would be unavailing.  Id. ' 2.709.[4]

In this case, as its damages for PISC=s repudiation of the agreement,
Dealers claimed that it paid the manufacturer either the contract price for the
transformer or a cancellation fee in that amount.  However, there is no evidence that: (1) PISC
ever received or accepted the transformer; (2) Dealers (or anyone else) made
any effort to resell it; or (3) a reasonable effort to do so would have been
unavailing.  In addition, the record
contains no evidence of any market price for the transformer that differed from
the contract price (or that this measure of damages would be inadequate), so as
to support a damage finding under section 2.708.  Nor did Dealers have any personal knowledge
or offer any documentary evidence that it actually made any payment to the manufacturer
for the transformer.[5]  Similarly, there is no evidence that Dealers
or PISC ever expressly agreed, or otherwise became legally obligated, to pay a
100% cancellation fee in the transaction.[6]








Dealers also contends that it was
entitled to recover the cancellation fee as an incidental damage under
subsection 2.708(b) because A[T]here is no dispute that the cancellation fee charged by
the manufacturer in this case is a reasonable and customary business charge.@ 
On the contrary, as the foregoing discussion illustrates, there could
hardly be greater dispute in this case as to the reasonableness of a
100% cancellation fee.  More importantly,
however, as also noted above, there is no evidence in this case that the damage
measure in subsection 2.708(a) is inadequate, so as to make subsection 2.708(b)
applicable, or the incidental damage recovery provided therein.  Nor has Dealers cited any authority that
incidental damages can be recovered under subsection 2.708(b) where, as here,
there is also no evidence to establish any amount of lost profit.  Under these circumstances, the evidence is
legally insufficient to show what, if any, damage Dealers suffered from PISC=s repudiation of the agreement.

Because Dealers failed to establish
any damage resulting from the transaction, it was not entitled to an award of
statutory attorney=s fees.[7]  Similarly, Dealers was entitled to recover
attorney=s fees under the parties= written agreement only if it was Anecessary . . . to institute legal
proceedings against [PISC] to enforce the terms [of the agreement] or to
recover any indebtedness or damages . . . .@ 
Because Dealers failed to establish that it was entitled to enforce any
terms of the agreement or to recover any damages, it was thus also not entitled
to recover any contractual attorney=s fees.  Accordingly, we reverse the trial court=s judgment and render a take-nothing
judgment in favor of PISC.

 

/s/        Richard
H. Edelman

Justice

 

Judgment rendered and Memorandum
Opinion filed June 1, 2004.

Panel consists of Justices Fowler,
Edelman, and Seymore.

 

 











[1]           See
Tex. Bus. & Com. Code Ann.
' 1.305(a) (Vernon Supp. 2004); Lakewood Pipe of
Tex., Inc. v. Conveying Techniques, Inc., 814 S.W.2d 553, 555 (Tex. App.CHouston [1st Dist.] 1991, no writ).





[2]           See,
e.g., Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 138
(Tex. App.CHouston [14th Dist.] 2000, pet dism=d).





[3]           See
e.g. Lakewood Pipe of Tex., Inc., 814 S.W.2d at 555-56 (profit plus
incidental damages, as set forth in section 2.708(b) of the Texas Business and
Commerce Code, is the applicable measure of damages when a seller sues on buyer=s breach of contract to purchase specialized piece of
equipment that has no market value).





[4]           Thus,
an action for the price is generally limited to cases in which the buyer has
accepted the goods, the goods have been destroyed after risk of loss passed to
the buyer, or resale of the goods is otherwise shown to be impracticable.  See Tex.
Bus. & Com. Code Ann. ' 2.709
cmt. 2 (Vernon 1994).





[5]           Instead,
it relied on testimony that Athey normally pay their bills@ and that it had found nothing in its file to indicate
whether it failed or refused to pay the invoice from the manufacturer, which is
insufficient to support an inference of payment.





[6]           A
party has no right to have a contract term enforced that violates the rule
limiting compensation to the damages actually sustained.  Phillips, 820 S.W.2d at 788.  Thus, even if a liquidated damage term in the
form of a 100% cancellation fee had been expressly agreed to (such as under
paragraph 7 or 8 of the agreement, neither of which so stated), it would have
required proof that the actual damage amount was difficult to ascertain and
that the liquidated damage amount was a reasonable forecast of just
compensation, neither of which was shown in this case.





[7]           See
Tex. Civ. Prac. & Rem. Code Ann.
' 38.001 (Vernon 1997) (allowing recovery of attorney=s fees in addition to the amount of a Avalid claim@); Green
Int=l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (holding that a party that fails to
recover damages may not recover attorney=s fees
under section 38.001).